UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**SHIRLEY JEAN NICKLES,**

    **Plaintiff,**

v.                                    **Case No: 8:13-cv-395-DNF**

**COMMISSIONER OF SOCIAL SECURITY[1],**

    **Defendant.**

___

## OPINION AND ORDER

This cause is before the Court on Plaintiff Shirley Jean Nickles's Complaint (Doc. 1) filed on February 13, 2013. Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Social Security Disability Insurance Benefits and Supplemental Security Income disability benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I. Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

    **A. Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the Defendant in this suit. FED. R. CIV. P. 25(d). No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382a(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

### B.  Procedural History

On July 22, 2009, Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income benefits asserting a disability onset date of August 1, 2007. (Tr. 125-36, 159).  On October 6, 2009, the Commissioner denied the applications initially, and denied the application upon reconsideration on February 25, 2010. (Tr. 80-89).  A hearing was held before Administrative Law Judge ("ALJ") Elving L. Torres on April 20, 2011, (Tr. 41-71), and the ALJ issued an unfavorable decision on August 12, 2011. (Tr. 20-39). On December 12, 2012, the Appeals Council denied Plaintiff's request for review. (Tr. 1-3).  Plaintiff filed the instant action in federal court on November 4, 2013.

### C.  Summary of the ALJ's Decision

The ALJ found Plaintiff met the Social Security Act's insured status requirements through December 31, 2012.  (Tr. 25).  At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 1, 2007. (Tr. 25).  At step two, the ALJ found that the Plaintiff suffered from the severe impairments of "bulging discs and degenerative changes of the lumbar spine, asthma, hypertension, and morbid obesity (20 CFR 404.1520(c) and 416.920(c))." (Tr. 25). At step three, the ALJ determined that Plaintiff

did not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926)." (Tr. 29). The ALJ found Plaintiff's shoulder pain caused no more than minimal limitations on her ability to engage in work-related activities. (Tr. 28). The ALJ found Plaintiff's mental impairments caused "at most, only mild limitations" in the areas of activities of daily living, social functioning, and concentration, persistence, or pace. (Tr. 29). The ALJ found no episodes of decompensation of an extended duration. (Tr. 29). At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work except that Plaintiff can only occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; she can occasionally climb ladders, but she must avoid scaffolds, ropes, and unprotected heights; and she must avoid concentrated exposure to noxious dust, smoke, fumes, gases, and poorly ventilated areas. (Tr. 29). At step five, the ALJ determined that Plaintiff is capable of performing past relevant work as a cashier, lab assistant, and medical assistant. (Tr. 33). The ALJ found that Plaintiff "has not been under a disability, as defined in the Social Security Act, from August 1, 2007 through the date of this decision." (Tr. 34).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales,* 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such

relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote,* 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II.  Review of Facts and Conclusions of Law

### A.   Background Facts

Plaintiff was born on March 20, 1955, (Tr. 132), and was 56 years old on the date of the first hearing.  (Tr. 45).  She has a GED, which is equivalent to a high school education.  (Tr. 45). She has a license to practice phlebotomy. (Tr. 45). She lives with her husband and thirteen-year-old son, who is disabled and receives SSI benefits. (Tr. 58-59).   She prepares meals for her son and helps him with homework, but testified that she is otherwise limited in her ability to care for him. (Tr. 59). Plaintiff's past work was as a phlebotomist and as a cashier. (Tr. 48). Plaintiff testified that she stopped working as a phlebotomist because of an increase in blood pressure. (Tr. 49). She also testified that her asthma, sciatic nerve problem, congenital narrowing of the spine, and suspected fibromyalgia made her work difficult. (Tr. 50). Plaintiff complains of back pain, and takes pain medication three times a day. (Tr. 52). Plaintiff testified that she has

difficulty walking, as she experiences discomfort in her back and legs. (Tr. 53). Plaintiff testified that her weight ranges between 210 and 229 pounds and that she is 5'5". (Tr. 54) Plaintiff stated that she is able to lift 20 pounds and that she can sit for 45 minutes to an hour. (Tr. 57). Plaintiff testified that she experiences depression and feelings of worthlessness, but never suicidal thoughts. (Tr. 60). Plaintiff stated that she shops at Wal-Mart with her daughters. (Tr. 61).

Plaintiff asserts that her asthma is aggravated by allergies, and that she sometimes experiences respiratory infections. (Tr. 63). Plaintiff has been diagnosed with arthritis, for which she takes medications that she asserts cause chronic drowsiness. (Tr. 64). Plaintiff alleges that she suffers from vertigo on at least three occasions per year, lasting for up to a week at a time. (Tr. 65). Plaintiff asserts that the medications she takes have negative effects on her concentration. (Tr. 66). She also states that her daughters sometimes come to her house and help her bathe, as she has trouble getting in and out of the shower. (Tr. 66). Plaintiff testified that she used to go on walks and out to dinner with friends, but that she has been unable to do these things for at least a year due to her health conditions. (Tr. 67).

Plaintiff completed a Function Report – Adult on August 24, 2009. (Tr. 177). Plaintiff indicated that she gets up on weekdays to make sure her son gets ready for school, and usually takes her medication. (Tr. 177). Plaintiff stated that she then either sits up for a while or lays back down until her son gets off school, at which point she gets up and makes sure he gets off the school bus. (Tr. 177). She stated that she sometimes attempts to do house work, but that this is difficult. (Tr. 177). On weekends, Plaintiff says that she is mostly in bed. (Tr. 177). Plaintiff stated that she gets help from her husband and daughter in making sure that her son has breakfast and does his homework. (Tr. 178). Plaintiff takes care of her dog, a Chihuahua, feeding and letting him out. (Tr. 178). She stated that before her alleged disability, she was able to work,

clean her house, walk long distances, stand and sit for long periods, and be intimate with her husband, but that she can no longer do these things. (Tr. 178). Plaintiff indicated that she tosses and turns at night and sometimes does not sleep at all. (Tr. 178). Plaintiff stated that she can mostly dress herself, and that she normally wears "night shirts and dusters". (Tr. 178). She takes showers, as it is difficult for her to bathe, and sometimes washing lower areas causes her discomfort. (Tr. 178). Plaintiff's daughter takes care of Plaintiff's hair, as she is unable to sit in hair salons for long periods. (Tr. 178). Plaintiff does not shave. (Tr. 178). Plaintiff stated that she has "no problem" feeding herself and "no problem" using the toilet, except she sometimes has back pain. (Tr. 178).

Plaintiff needs no reminders to take care of personal needs and grooming, and no reminders to take medicine. (Tr. 179). Plaintiff usually fixes sandwiches for herself for lunch and is able to cook full meals if it something that she can "just put on and let it cook." (Tr. 179). Plaintiff stated that her husband does a lot of the cooking. (Tr. 179). Plaintiff spends 2-4 hours preparing meals "maybe twice a week." (Tr. 179). Plaintiff stated that she does laundry regularly and housework sometimes when her pain is not too severe. (Tr. 179). Plaintiff stated that she cannot do yard work because her back hurts when she bends, lifts, twists, turns, or stoops. (Tr. 180). She goes outside only when necessary, such as to get the mail or walk down the sidewalk to get her son from the bus stop. (Tr. 180). She can drive or ride in a car, and can go out alone. (Tr. 180). Plaintiff indicated that she shops in stores for food, household goods, and clothes for 1-2 hours at a time on a monthly basis. (Tr. 180). She is able to pay bills, count change, handle a savings account, and use a checkbook/money orders, and her ability to handle money has not changed since her alleged disability began. (Tr. 180-81). Plaintiff watches TV daily and reads sometimes if pain isn't severe. (Tr. 181). Plaintiff sometimes talks to friends on the phone, but

does not do much in-person visiting. (Tr. 181). Plaintiff goes to church on a regular basis, usually attending on Tuesdays and Sundays without needing to be reminded. (Tr. 181). Plaintiff stated that she does not have any problem getting along with family, friends, or neighbors, but that sometimes she is depressed and does not want to be social. (Tr. 182). Plaintiff stated that, since the onset of her alleged disability, she does not go to movies with friends, does not go shopping with friends as frequently, and does not go out of town to church functions anymore. (Tr. 182). Plaintiff stated that she can lift about 5 to 10 pounds, and that she is limited in her ability to squat, bend, stand, reach, walk, sit, kneel, climb stairs, and complete tasks. (Tr. 182).

### B. Vocational Expert

A Vocational Expert, Ms. Ryan, testified at the hearing before the ALJ April 20, 2011. Ms. Ryan testified that Plaintiff has past relevant work as a cashier/checker, which is DOT code 211.462-014, SVP: 3, semi-skilled, and light work. (Tr. 69). Ms. Ryan testified that Plaintiff's past relevant work also included that of a phlebotomist, which is DOT code 079.364-022, SVP: 3, semi-skilled, and light work. (Tr. 69). Ms. Ryan testified that Plaintiff also had past relevant work as a lab assistant, which is DOT code 078.687-010, SVP: 6, skilled, and light work; however, Ms. Ryan believed that Plaintiff performed this work at the semi-skilled level. (Tr. 69). Finally, Ms. Ryan testified that Plaintiff's past relevant work also included that of a medical assistant which is DOT code 079.362-010, SVP: 6, skilled, and light work; however, Ms. Ryan believed that Plaintiff performed this work at a semi-skilled level, "perhaps at the SVP: 4." (Tr. 69).

The ALJ presented the following hypothetical to Ms. Horvath:

**ALJ:** Assuming a hypothetical – a person of – advanced age individual and advanced age between the ages of 52 and 56 with a high school equivalent education, and assuming for the purpose of this hypothetical the exertion capacity for medium level involving occasional climbing, balancing, stooping, kneeling,

crouching, and crawling, climbing occasional ladders, but no climbing scaffolds, ropes, or at open heights, assuming the avoidance of concentrated exposure to noxious dust, smoke, fumes gases, as well as working in poorly ventilated areas. With these premises, could such a hypothetical person perform any of the claimant's past occupations as actually performed or as generally performed in the economy?

**VE:** Yes, Your Honor, all of the past relevant work falls within that hypothetical.

**ALJ**: What if the hypothetical individual would be limited to light exertion with the aforesaid restrictions?

**VE**: Yes, Your Honor.

**ALJ:** She could do all the claimant's past relevant jobs?

**VE**: Yes, sir, it would all fall within a light level of exertion RFC.

**ALJ:** If the hypothetical individual would be limited to sitting 45 minutes to one hour and would need to lie down for most of the eight-hour day, would that hypothetical individual be able to perform any of the claimant's past relevant jobs or any other jobs?

**VE**: Neither. There would be no past relevant work or any other jobs.

**ALJ:** Any conflict between your testimony and the information that appears in the

Dictionary of Occupational Titles or the Selected Characteristics of Occupations?

**VE:** No, sir, no conflict.

**ALJ:** Counsel, do you have any additional questions?

**VE:** No, Your Honor.

(Tr. 69-70).

### C. State Agency Evaluations

On September 29, 2009, Dr. Robert Shefsky completed a Consultative Examination Report. (Tr. 272-78). Dr. Shefsky found that Plaintiff appeared to be in no acute distress, had a wide-based gait, could walk on her toes, but had difficulty walking on her heels due to knee pain, and could not do a full squat. (Tr. 273) He observed that Plaintiff did not need an assistive

device, and needed no help changing for her exam or getting off the exam table. (Tr. 273). Dr. Shefsky found no abnormalities with her skin, head, face, eyes, ears, nose, throat, neck, chest, or lungs. (Tr. 273-74). He found that Plaintiff's heart had a regular rhythm, but that she had "PMI in left 5th intercostal space at midclavicular line." (Tr. 274). Dr. Shefsky found no irregularities with Plaintiff's abdomen. (Tr. 274). He found no musculoskeletal irregularities, except that Plaintiff could only rotate about 60 degrees to the right. (Tr. 274). He found that Plaintiff had no neurological issue, and no irregularities in her extremities, fine motor activity of hands, or mental status. (Tr. 274). Dr. Shefsky's diagnosis was that Plaintiff suffered from back pain, high blood pressure, and asthma, and that her prognosis is "fair". (Tr. 275).

On October 2, 2009, Thurben James completed a Physical Residual Functional Capacity Assessment. (Tr. 279-86). Mr. James determined that Plaintiff could lift 50 pounds occasionally, 25 pounds frequently, could stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour work day, could sit for 6 hours in an 8-hour workday, and was unlimited in the push and/or pull operation for hand and/or foot controls. (Tr. 280). Mr. James found no postural limitations, manipulative limitations, visual limitations, communicative limitations, and environmental limitations. (Tr. 281-83). Mr. Thurben found that "MER supports Claimant's allegations of a MDI, however objective findings do not support symptom severity," and that Plaintiff is capable of "performing work within the confines of this RFC." (Tr. 284).

On October 6, 2009, Martha Putney Ph.D. completed a Psychiatric Review Technique. (Tr. 287-300). Dr. Putney determined Plaintiff had medical impairment(s) that were not severe, and had affective disorders. (Tr. 287). Dr. Putney found Plaintiff to have a medically determinable impairment of "depression 2/0 GMC. No Psych Tx. Lexapro from PCP." (Tr.

290). Dr. Putney determined that Plaintiff had no functional limitations or restrictions in activities of daily living, mild difficulties in maintaining social functioning, no limitations in maintaining concentration, persistence, or pace, and no episodes of decompensation of an extended duration. (Tr. 297). Dr. Putney found Plaintiff to have a minimal decrease in function due to depression, and to be able to work as her physical limitations permit. (Tr. 299).

On January 7, 2010, Dr. Ronald Kline completed a Physical Residual Functional Capacity Assessment. (Tr. 301-8). Dr. Kline determined that Plaintiff could lift 50 pounds occasionally, 25 pounds frequently, could stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour work day, could sit for 6 hours in an 8-hour workday, and was unlimited in the push and/or pull operation for hand and/or foot controls. (Tr. 302). Dr. Kline noted that Plaintiff was morbidly obese with a history of hypertension and a history of mild asthma with no severe attacks. (Tr. 302). Dr. Kline found no postural limitations, manipulative limitations, visual limitations, communicative limitations, and environmental limitations. (Tr. 303-5). Dr. Kline found that Plaintiff's allegations may be credible, but that Plaintiff "appears capable of activities within the parameters of this RFC." (Tr. 306).

On January 16, 2010, Dr. Maureen O'Harra completed a consultative examination report. (Tr. 309-311). Dr. O'Harra noted that Plaintiff drove herself over a moderate distance to the interview, was cleanly and appropriately dressed, and had good hygiene. (Tr. 310). She also noted that Plaintiff shifted frequently in her seat, complained of poor hearing, and tended to ramble a bit. (Tr. 310). Dr. O'Harra stated that she did not believe Plaintiff "exaggerated or under reported her symptoms of depression." (Tr. 310). She also stated that Plaintiff's "history with an abusive foster parent and her inability to cope with the demands of the drug-abusing sister are features that make her depression more intense." (Tr. 311). Dr. O'Harra diagnosed

Plaintiff with "[m]ajor depressive disorder, chronic (296.2) poor prognosis" and "[d]ependent personality (301.6), moderate, poor prognosis." (Tr. 311).

On February 23, 2010, Nancy Dinwoodie, M.D., completed a Psychiatric Review Technique. (Tr. 312-323). Dr. Dinwoodie determined Plaintiff had medical impairment(s) that were not severe, had coexisting nonmental impairment(s) that requires referral to another medical specialty, and had affective disorders. (Tr. 312). Dr. Dinwoodie found Plaintiff to have a medically determinable impairment of "depression related to pain." (Tr. 315). Dr. Dinwoodie determined that Plaintiff had mild functional limitations for restrictions of activities of daily living, mild difficulties in maintaining social functioning, mild limitations in maintaining concentration, persistence, or pace, and no episodes of decompensation of an extended duration. (Tr. 322).

### D. Specific Issues

Plaintiff raises two issues on appeal: (1) whether the ALJ improperly determined that Plaintiff did not have a severe mental impairment despite the conclusions of SSA's own psychological examining expert and plaintiff's treating physician to the contrary; and (2) whether the ALJ failed to include all of Plaintiff's mental and physical limitations in the residual functional capacity determination.

### 1. Whether the ALJ improperly determined that Plaintiff did not have a severe mental impairment.

Plaintiff argues that the ALJ erred by finding that Plaintiff did not have a severe mental impairment. (Doc. 20 p. 5). Plaintiff's position is that the ALJ should have given greater weight to the opinions of Dr. Maureen O'Harra and Dr. Loren Carlson whose opinions, Plaintiff argues, demonstrate the presence of a severe mental impairment. (Doc. 20 p. 7). Plaintiff further argues that the ALJ's failure to find severe mental impairments was not harmless error because the ALJ

did not comprehensively describe Plaintiff's established mental limitations when making his RFC determination. (Doc. 20 p. 8). The Commissioner responds that the ALJ's determination was supported by substantial evidence, and that the opinions of Dr. O'Harra and Dr. Carlson were properly evaluated in the context of the complete record. (Doc. 21 p. 4).

At issue here is step two of the ALJ's disability determination, where severity is analyzed. At this step, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months. *See* 20 C.F.R. §§ 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

According to the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," but only that the ALJ considered the claimant's impairments in combination, whether severe or not. *Heatly v. Comm'r of Soc. Sec.*, 382 F.App'x 823, 825 (11th Cir. 2010). If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, ___ F. App'x ___, 2013 WL 6840288, at *1 (11th Cir. Dec. 30, 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

In this case, the ALJ found Plaintiff had the severe impairments of bulging discs and degenerative changes of the lumbar spine, asthma, hypertension, and morbid obesity. (Tr. 25). The ALJ specified that Plaintiff did not have an "impairment or combination of impairments" that met or medically equaled a listed impairment, thus showing that he considered the combined effect of Plaintiff's impairments. Contrary to Plaintiff's claim, the ALJ's opinion shows that although he did not find Plaintiff to have severe mental impairments, he addressed Plaintiff's depression in his RFC determination. For these reasons, the Court finds that remand is not appropriate for the ALJ's failure to find that Plaintiff had a severe mental impairment at step two.

**2. Whether Substantial Evidence Supports the Commissioner's Residual Functional Capacity Determination**

**a. Whether Substantial Evidence Supports the ALJ's Evaluation of Plaintiff's Mental Limitations**

Plaintiff argues that the ALJ erred by failing to properly consider Plaintiff's "mild" limitations in activities of daily living, social functioning, and concentration, persistence and pace, in determining Plaintiff's RFC. (Doc. 20 p. 11). Plaintiff contends "mild" limitations have at least some effect on Plaintiff's ability to work, and thus, the ALJ is required to address even "mild" limitations in determining Plaintiff's RFC. (Doc. 20 p. 11). The Commissioner argues that the ALJ adequately considered Plaintiff's non-severe mental impairments, as he specifically addressed Plaintiff's mental impairments in his residual functional capacity determination, and stated that they do not limit Plaintiff's functional abilities for the reasons specified at step two. (Doc. 21, 10).

A claimant's residual functional capacity is defined as the most that a claimant is capable of doing despite impairments, given all relevant evidence. 20 C.F.R. §§ 404.1520(a). When

evaluating a claimant's residual functional capacity, an ALJ must consider all impairments, whether severe or not, in combination. *Bowen v. Heckler*, 748 F.2d 629, 634-35 (11th Cir. 1984). SSR 85-16 provides that the ALJ must discuss all limitations on work-related activities that result from a claimant's mental impairments.

In this case, the ALJ found that Plaintiff's mental impairments did not "either singly or in combination with other impairments, create more than minimal limitations on the claimant's ability to function." (Tr. 29). In his residual functional capacity determination, the ALJ stated that "the claimant's treatment history and evaluations of record reflect no more than mild limitations stemming from the claimant's alleged depression and anxiety," and that the claimant's subjective allegations regarding the symptoms and limitations resulting from these impairments are therefore "less than fully credible." (Tr. 31). Because "[c]redibility determinations are the province of the ALJ", *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005), this was proper. These statements of the ALJ clearly indicate that the he fully considered Plaintiff's mental impairments in his residual functional capacity determination, even though he found these impairments to be non-severe. Because the ALJ found that Plaintiff's mental impairments did not have a substantial impact on Plaintiff's functional abilities, there was no need to exhaustively discuss every aspect of these non-severe mental impairments, as the residual functional capacity determination is concerned only with limitations on "basic work-related activities." Soc. Sec. Rep. Serv. 352 (S.S.A 1985).

Therefore, because the ALJ found that Plaintiff's mental impairments had no more than a minimal effect on Plaintiff's functional abilities, and because the ALJ did explicitly address Plaintiff's non-severe mental impairments in his residual functional capacity assessment, substantial evidence supported the ALJ's evaluation of Plaintiff's mental limitations.

### b. Whether Substantial Evidence Supports the ALJ's Evaluation of Plaintiff's Physical Limitations

Plaintiff argues that the ALJ 's finding that Plaintiff can perform light work is erroneous in light of the opinions of two treating physicians, Dr. Myrdalis Diaz-Ramirez and Dr. Paul R. Minton. (Doc. 20 p. 13). Plaintiff states that the functional limitations found by these doctors should have been accorded more weight by the ALJ, and that the ALJ failed to adequately explain his reasons for not accepting the conclusions of these doctors. (Doc. 20 p. 17). The Commissioner argues that the ALJ's determination is supported by substantial evidence, that the ALJ is under no obligation to adopt a doctor's opinion, and that the ALJ adequately articulated his reasons for giving little weight to the opinions of Dr. Diaz-Ramirez and Dr. Minton. (Doc. 21 p. 11-16).

In making a residual functional capacity assessment, an ALJ must consider all relevant medical evidence, and must articulate reasons for the weight accorded to each piece of evidence. *See Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997). Social Security Regulations "establish a 'hierarchy' among medical opinions that provides a framework for determining the weight afforded each medical opinion." *Belge v. Astrue*, No. 3:09-cv-529-J-JRK, 2010 WL 3824156, at *3 (M.D. Fla. Sept. 27, 2010). Under this hierarchy, "the opinions of examining physicians are generally given more weight than nonexamining physicians; treating physicians receive more weight that nontreating physicians; and specialists on issues within their areas of expertise receive more weight than nonspecialists." *Id*. (internal citations and quotations omitted). When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless "good cause" is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987) (noting that a treating physician's medical opinion may be discounted when it is not

accompanied by objective medical evidence); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d). Such a preference is given to treating sources because they are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). "Good cause" for rejecting a treating source's opinion may be found where the treating source's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).

In this case, the medical record shows that Dr. Diaz-Ramirez opined in April 2011 that Plaintiff was able to sit for three hours, stand for two hours, and walk for one hour. (Tr. 389). She further opined that Plaintiff would need to rest from standing every fifteen minutes and rest from sitting every forty minutes. (Tr. 389). In Dr. Diaz-Ramirez's opinion, Plaintiff could never bend, squat, crawl, climb, or reach above shoulder level. (Tr. 391). Furthermore, she found that Plaintiff was limited to frequently carrying less than five pounds and occasionally carrying up to ten pounds. (Tr. 390).

In his opinion, the ALJ gave several reasons for his decision to accord the opinion of Dr. Diaz-Ramirez little weight. (Tr. 32). The ALJ noted that an MRI of Plaintiff's lumbar spine showed minimal degenerative change and spondylosis, and mild bilateral neural forminal narrowing, results which do not seem to support the findings of Dr. Diaz-Ramirez. (Tr. 32, 349). The ALJ noted that, while Dr. Diaz-Ramirez is a specialist in pain management, she never prescribed potent pain management drugs or any pain management modalities for Plaintiff. (Tr.

32, 326-55). The ALJ also noted that the record does not indicate any other significant treatment, besides epidural steroid injections prescribed by another doctor in 2007. (Tr. 32, 244). Additionally, the ALJ found that Dr. Diaz-Ramirez's opinion was not supported by the evidence regarding Plaintiff's daily activities, which include such things as getting her disabled son up and off to school, occasional cooking, shopping, laundry, driving, paying bills, and attending church. (Tr. 32, 177-81). Given this explanation, the Court finds that the ALJ adequately articulated good cause for his decision to accord Dr. Diaz-Ramirez's opinion little weight.

As to the opinion of Dr. Minton, the Court finds that is irrelevant to the determination of whether the ALJ's opinion was supported by substantial evidence. The ALJ found that Plaintiff was not under a disability through the date of his decision, August 12, 2011. Dr. Minton's opinion is dated February 22, 2012, months after the ALJ's decision. As this evidence relates to the time period after the relevant time period analyzed by the ALJ, it does not affect the decision of whether Plaintiff was disabled or not before August 12, 2011. As the Appeals Council explained, if Plaintiff seeks to show that she was disabled after August 12, 2011, she must apply for social security benefits again.

### III. Conclusion

For the reasons states above, it is hereby **ORDERED:**

1. The final decision of the Commissioner is **AFFIRMED**.

2. The Clerk is directed to enter judgment for the Commissioner and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on August 22, 2014.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

- 18 -

Copies furnished to:

Counsel of Record
Unrepresented Parties